No. 14-11111

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### CURTIS J. COLLINS,

*Plantiff - Appellant*

v.

### EXPERIAN INFORMATION
### SOLUTIONS, INC.;

*Defendant - Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

---

### PETITION FOR PANEL REHEARING

---

### PETITION FILED ON BEHALF OF
### CURTIS J. COLLINS

---

**Counsel for Petitioner**

| | | |
|---|---|---|
| **David L. Selby, II** | **Patricia M. Kipnis** | **Wesley L. Phillips** |
| **Bailey & Glasser, LLP** | **Bailey & Glasser, LLP** | **Phillips Law Group,** |
| **3000 Riverchase** | **135 Kings Highway E.** | **LLC** |
| **Galleria** | **3rd Floor E.** | **P.O. Box 362001** |
| **Suite 905** | **Haddonfield, NJ 08033** | **Birmingham, AL 35236** |
| **Birmingham, AL 35244** | **(856) 795-0378** | **(205) 383-3585** |
| **(205) 988-9253** | | |

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

*Curtis J. Collins v. Experian Information Solutions, Inc.*, Appeal No. 14-11111

The following is a list of the trial judges(s), and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case of appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

- Bailey & Glasser LLP as attorneys for Plaintiff;

- Collins, Curtis J. as a named Plaintiff;

- Crawford, Rebecca B., as attorney for Defendant;

- Experian Information Solutions, Inc. as a named Defendant;

- Ferguson Frost & Dodson, LLP as attorneys for Defendant;

- Hanthorn, Gregory, as attorney for Defendant;

- Jones Day as attorneys for Defendant;

- Kallon, Abdul K., District Court Judge;

- Kipnis, Patricia M., as attorney for Plaintiff;

- Phillips Law Group, LLC as attorneys for Plaintiff;

- Phillips, Wesley L., as attorney for Plaintiff;

- Selby II, David L., as attorney for Plaintiff;

- Young, Jr., L. Jackson, as attorney for Defendant;

C-1

## JURISDICTIONAL STATEMENT

This is a petition for rehearing by Plaintiff -Appellant Curtis Collins of this Court's Opinion entered on January 5, 2015. Pursuant to United States Court of Appeals, Eleventh Circuit Rule 40-3, Mr. Collin's deadline to file this petition was 21 days from the entry of judgment, or January 26, 2015. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## INTRODUCTION

Plaintiff-Appellant Curtis Collins ("Mr. Collins") respectfully submits this petition for rehearing on the basis that the Court committed an error of law by holding that no reasonable jury could find defendant-Appellee Experian Information System's conduct to be in reckless disregard of the law, in light of the Supreme Court's precedent set forth in *Safeco Insurance Company of America v. Burr,* 551 U.S. 47, 127 S. Ct. 2201 (2007), as confirmed by the unanimous view of the federal Circuit Courts of Appeal. Following this Court's opinion issued on January 5, 2015, the National Consumer Law Center ("NCLC") approached the undersigned counsel with grave concerns about the discrete portion of the Court's decision (Section II.B) finding that "parroting"—the conduct engaged in by Defendant-Appellee Experian Information Solutions, Inc. ("Experian") whereby it relied solely on incorrect information provided by the credit furnisher and performed no additional investigation despite Mr. Collins informing Experian of

1

the inaccuracy of that information—as a matter of law could not rise to the level of willfulness under 15 U.S.C. § 1681n(a) of the Fair Credit Reporting Act ("FCRA"). This portion of the Court's decision conflicts with the Supreme Court's decision in *Safeco* and will result in serious negative consequences for the very consumers the FCRA was meant to protect. Along with this petition, NCLC will seek leave to file an amicus brief to present the broader legal implications of the Court's ruling as it stands.

## STATEMENT OF THE ISSUE

Mr. Collins respectfully petitions this Court to reconsider its affirmance of the lower court's grant of summary judgment in favor of Experian holding that no reasonable jury could find that Experian's reinvestigation conduct under 15 U.S.C. § 1681i(a) could rise to the level of a willful violation.[1] Under § 1681i(a), consumer reporting agencies must promptly conduct a "reasonable reinvestigation" of information in a credit report when a consumer disputes the accuracy or completeness of that information. Under the Supreme Court's decision in *Safeco*, where a consumer reporting agency ("CRA"), in this case Experian,

---

[1] Section II.B of the Opinion constituted only the final two paragraphs of the Court's discussion. Mr. Collins does not ask the Court to revisit the remainder of its Opinion, in which it reversed the district court's determination that third-party publication is necessary in order for a consumer to be entitled to actual damages under 15 U.S.C. § 1681i(a) and remanded to the district court to determine in the first instance whether Mr. Collins had presented sufficient evidence of actual damages to create a jury question.

engages in conduct that a federal court of appeals has already deemed to potentially violate a consumer's rights, such actions taken by the CRA can be considered a willful violation of the FCRA. See *Safeco*, 551 U.S. at 70, 127 S. Ct. at 2216 and 15 U.S.C. § 1681n(a); *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). In fact, numerous federal courts of appeal have held that "parroting," the very conduct engaged in by Experian in this case, constitutes precisely such proscribed behavior and therefore, under *Safeco*, Experian's conduct could be found by a reasonable jury to be a willful violation of Mr. Collins' rights.  Mr. Collins therefore petitions this Court to reverse its affirmance of the lower court's grant of summary judgment on the issue of willfulness because it goes against the teaching of the Supreme Court and other appellate court authority and will have serious negative consequences.

## ARGUMENT

**1.    APPELLATE COURTS HAVE HELD THAT PARROTING DOES NOT CONSTITUTE A "REASONABLE REINVESTIGATION" UNDER § 1681i(a) AND THEREFORE ENGAGEMENT IN SUCH CONDUCT BY EXPERIAN COULD BE FOUND TO BE A WILLFUL VIOLATION OF THE FCRA.**

Under 15 U.S.C. § 1681n(a), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual, statutory, or punitive damages. See *Harris v. Mexican Specialty Foods, Inc*., 564 F.3d 1301, 1306 (11th Cir. 2009). The proper

3

standard for willful claims under the FCRA was established by the Supreme Court in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201 (2007). The *Safeco* decision rejected the argument that a willful violation had to be intentional and instead held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco,* 551 U.S. at 71, 127 S. Ct. at 2216; *see also Harris*, 564 F.3d at 1310 ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law.").  Entities subject to the FCRA do not act in reckless disregard of the law "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69, 127 S. Ct. at 2215.

Of central importance is the Supreme Court's finding that the defendant in *Safeco* did not willfully violate the FCRA because it did not have "the *benefit of guidance from the courts of appeals* or the Federal Trade Commission (FTC) that might have warned it away from the view it took." *Safeco*, 551 U.S. at 70, 127 S. Ct. at 2216 (emphasis added). In other words, where the FCRA is "less-than-pellucid" and a court of appeals has not already held that certain conduct is a violation of the FCRA, then the CRA's engagement in such conduct could be

4

considered merely negligent. However, when at least one court of appeals has held that certain conduct was a violation of a consumer's rights under the FCRA and thus unreasonable, it follows that engagement in such conduct by a CRA, in contravention of an appellate court's holding, could be seen as more than a "careless" reading of the FCRA's terms. Instead, it could reflect a knowing and reckless disregard of a requirement of the FCRA. *See Levine*, 554 F.3d at 1318 (citing *Safeco* and agreeing that failing to follow guidance from the courts of appeal could render CRA's interpretation of the FCRA "objectively unreasonable" and therefore a willful violation of the Act). Under *Harris* and *Safeco*, such conduct would constitute a willful violation.

Here, where several federal courts of appeals have found that parroting is a violation of a consumer's rights under § 1681i(a), Experian had the requisite guidance from the courts of appeal to render their engagement in such conduct knowing and reckless and thus willful. Mr. Collins therefore should have the opportunity to present such facts and argument to a jury.

### A. Federal Courts of Appeal have held that "parroting" is an unreasonable procedure by a CRA.

Experian's conduct in its reinvestigation of Mr. Collins' claims constitutes classic "parroting," where the CRA defers to the original source "furnisher" of the alleged inaccurate information in a dispute without conducting an independent review or doing more to investigate, even where the consumer has provided

5

information to raise a question about the furnisher's reliability – in this case, informing Experian that Mr. Collin had won a lawsuit against the furnisher. *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir. 1997). The Third, Fifth, and Seventh Circuit Courts of Appeal have all found that such conduct could be "unreasonable" and therefore a violation of § 1681i(a).  *See Cushman,* 115 F.3d at 224; *Stevenson v. TRW Inc.,* 987 F.2d 288 (5th Cir. 1993); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286 (7th Cir. 1994). As these courts of appeal have all reached such a conclusion, thereby warning Experian that parroting could violate the consumer's rights, *Safeco* dictates that Experian's engagement in that same conduct could constitute a willful violation of the FCRA. Accordingly, a finder of fact must be permitted to make the assessment.

1. **The Third Circuit Court of Appeals has found that a CRA's reliance on "parroting" could be a willful violation of a consumer's rights under § 1681i(a).**

In *Cushman v. Trans Union Corporation,* 115 F.3d 220 (3d Cir. 1997), the consumer, a victim of identity theft, reported inaccuracies on her credit report. The CRA contacted the credit furnisher, which confirmed that the verifying information provided by the credit applicant (an imposter) matched that of Cushman, the consumer. When Cushman again contacted the CRA to dispute the continuing inaccuracy in her credit report and explained the theft of her identifying information, the CRA took identical steps as it had the first time-- it called the

credit furnisher and confirmed that the verifying information matched Cushman's. The Third Circuit held that more was required from the CRA to constitute a reasonable reinvestigation:

> [The CRA] contends that § 1681i(a) did not impose on it an obligation to do any more than perform the reinvestigation it performed in this case. That is, [the CRA] believes that when a consumer informs a consumer reporting agency that information contained in her consumer report is inaccurate, the consumer reporting agency is obliged only to confirm the accuracy of the information with the original source of the information. According to [the CRA], it is never required to go beyond the original source in ascertaining whether the information is accurate. This position has been rejected by the United States Courts of Appeals for the Fifth and Seventh Circuits.

*Cushman*, 115 F.3d at 224 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) and *Stevenson v. TRW Inc.,* 987 F.2d 288 (5th Cir. 1993).) The *Cushman* court clearly found that such conduct does not constitute a "reasonable reinvestigation":

> The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. **The "grave responsibilit[y]" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.** Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.

*Cushman*,115 F.3d at 225 (quoting *Stevenson,* 987 F.2d 293). The Third Circuit ultimately held that under these circumstances, where a CRA was on notice that

the source of the information may be unreliable, a jury could find that relying on the original source of information was unreasonable and furthermore, that where a consumer can prove that the CRA " adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights" the consumer could be awarded punitive damages under § 1681n(a). *Cushman*, 115 F.3d at 227; see also *Schweitzer v. Equifax Info. Solutions L.L.C.*, 441 Fed. Appx. 896 (3d Cir. 2011). Thus, the Third Circuit has clearly held that a reasonable reinvestigation under § 1681i(a) requires more from a CRA than the actions undertaken by Experian, and that under the same set of facts, the CRA may be liable for willfully violating the FCRA.

   **2. The Fifth Circuit Court of Appeals has also found the CRA's failure to follow up with furnishers to be in contravention of a consumer's rights under § 1681(i)(a).**

   The Fifth Circuit had previously reached a similar conclusion as the *Cushman* court in *Stevenson v. TRW Inc.,* 987 F.2d 288 (5th Cir. 1993). In *Stevenson*, following a complaint from the consumer of inaccuracies in his credit report, the CRA sent Consumer Dispute Verification (CDV) forms to the credit furnishers that had originally supplied information concerning the consumer. The CRA relied exclusively on information from those furnishers in response to the CDV forms to make the conclusive determination of whether the information in

8

the credit report was accurate. *See id.* at 293. The Court upheld the lower court's decision that such conduct, essentially parroting back the information from furnishers without further investigation, was negligent on the part of the CRA and further stated that "[i]n a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. *Id.* (citing *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972, 976 (M.D. Fla. 1985)); see also *Pinner v. Schmidt,* 805 F.2d 1258 (5th Cir.1986), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987) (holding that it was unreasonable for a credit reporting agency to only contact an agent of the creditor to re-verify a delinquent account balance reported in the plaintiff's credit report where the plaintiff notified the credit reporting agency that he had a personal dispute with the agent). Clearly, like the Third Circuit decision, the decision by the Fifth Circuit reflects that a reasonable reinvestigation under § 1681i(a) requires more from Experian than the actions it took to reinvestigate Mr. Collins' dispute.

### 3. The Court of Appeals for the Seventh Circuit has also held that parroting does not fulfill the requirements of a reasonable reinvestigation under§ 1681(i)(a).

As in *Cushman* and *Stevenson*, in *Henson v. CSC Credit Services*, 29 F.3d 280, 286 (7th Cir. 1994), the Seventh Circuit Court of Appeals held that under § 1681i(a) parroting could be considered unreasonable following a specific

9

complaint by a consumer. In *Henson,* like here, the consumer's credit report erroneously reflected that an outstanding judgment had been entered against the plaintiff. *See Henson,* 29 F.3d at 282–83. Although the consumer disputed the accuracy of the judgment against him, the CRAs continued to rely only on the original source of the information and made no further investigation. The Court made a clear distinction between what a CRA must do to conduct a reasonable *investigation* versus a *reinvestigation*:

> [The CRA] argues that it did not violate a duty to reinvestigate because it had no duty, as a matter of law, to go beyond the Judgment Docket in conducting its reinvestigation. We disagree. A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice. As we indicated earlier, a credit reporting agency may *initially* rely on public court documents, because to require otherwise would be burdensome and inefficient. However*, such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report*. When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation.

*Id.* at 286–87 (emphasis added). The Court reversed the district court's dismissal of the § 1681i claim, finding that failing to look beyond the original source of the information in the credit report, the same conduct engaged in by Experian, could be a violation of § 1681i(a).

### B. Experian Engaged in Parroting in Its Reinvestigation of Mr. Collins' Inaccurate Credit Report

As did the plaintiffs in *Cushman*, *Stevenson* and *Henson*, Mr. Collins brings a claim against Experian under § 1681i(a). Mr. Collins asserts that Experian's reinvestigation of his claims was not only unreasonable but it rose to the level of a willful violation of the FCRA.

In his appeal to this Court, Mr. Collins set forth facts proving that Experian had engaged in parroting. As previously stated in his appellate brief to this Court, a debt to Equable Ascent Financial, LLC ("Equable") appeared on Mr. Collins' credit report despite the debt having been resolved in small claims court and judgment having been entered in favor of Mr. Collins. *See* Appellant Br. at pp. 3-4. In an attempt to remove the Equable debt from his credit file, Mr. Collins wrote to Experian explaining (i) that the Equable account was wrong, (ii) the details of the dispute, including the court adjudicating it, the results of the case, and the case number; and (iii) the precise means by which Experian could investigate further, specifically by contacting either the court itself or Equable's agents, its attorneys. *Id*. at p.4.

In response to this claim by Mr. Collins, Experian failed to investigate or take any action with respect to the Equable account but instead sent a letter back to Mr. Collins requesting some identifying information, the account name and number, and the specific reason why Mr. Collins believed the information was

inaccurate. Experian did not tell Mr. Collins that he needed to provide it with any pleadings, orders, or other documents, *id.,* nor does the FCRA require a consumer to do any such thing. *Id*. at pp. 4-5.

Having the burden placed back on him, Mr. Collins again provided Experian with exactly what the CRA requested and everything it needed to investigate the dispute: the name of the supposed creditor, the account number, the court that adjudicated the dispute, the case number, and all of his own personal identifying information. *Id*. at p.6.

In response to Mr. Collins' second dispute letter, Experian sent an Automated Consumer Dispute Verification form (ACDV) to Equable. The ACDV listed the dispute reason as "EQUABLE ASCENT SUED ME FOR THIS DEBT IN JEFFERSON COUNTY ALABAMA AND I WON." In response to the ACDV, Equable incorrectly responded that the debt was still valid. Experian did nothing else to investigate Mr. Collins' claim—it simply parroted back to Mr. Collins what Equable reported to it. *Id*. at pp. 6-7.  Experian admitted that it does no more than contact the furnisher when a consumer does not include some type of "proof document" in addition to the dispute letter.  *Id*. at p. 7.  The furnishing of "proof documents" that Experian claims are necessary before it will do anything other than contact the furnisher is not required or contemplated by the FCRA.

Although Experian reported Mr. Collins' claim as "reviewed," Mr. Collins' credit report continued to erroneously reflect the Equable debt. His report remained inaccurate until more than a month after he filed a lawsuit against Experian. *Id*. at pp. 7-8. The Equable trade line was only deleted by Experian as part of Experian's litigation strategy at the direction of Experian's counsel. *Id*. at p. 8.

### C. Because Experian had the benefit of the decisions from the federal appellate courts, its conduct in this case could be considered to be knowingly or recklessly in violation of Mr. Collins' rights under the FCRA.

As the Supreme Court warned CRAs in *Safeco*, engaging in conduct that knowingly violates the FCRA may rise to the level of a willful violation. *See Safeco*, 551 U.S. at 70, 127 S. Ct. at 2216. The Court stated that guidance from the federal appellate courts as to proscribed conduct could serve as adequate warning to CRAs such that failure to abide could be considered reckless. *Id*. Here, several federal appeals courts have found that merely reporting back inaccurate information from a possibly unreliable source, despite notice from the consumer of the inaccuracy of the information, could constitute an unreasonable reinvestigation. In formulating its reinvestigation, Experian had the benefit of *Cushman*, *Stevenson* and *Henson*, as well as numerous other lower courts' decisions.[2] Therefore, a

---

[2] *Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F. Supp. 2d 452, 463 (E.D. Pa. 2010) ("[T]he Third Circuit had already warned Trans Union that its reinvestigation procedures were deficient. The Cushman decision clearly instructs

reasonable jury could find that in the face of Mr. Collins' disputes, Experian's failure to take any additional steps to verify the information provided by Equable "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Inc.,* 551 U.S. at 68, 127 S. Ct. at 2215. On this basis, Mr. Collins respectfully requests that this Court reconsider Section

consumer reporting agencies that they must go beyond the original source in certain circumstances. Trans Union's attempt to avoid that instruction by citing another circuit's decision that is not on point is unavailing. Indeed, its argument suggests that it had no intention of correcting its reinvestigation procedures. It cannot avoid its obligations by creating an illusory exception. Thus, there is ample evidence to support a legal and factual determination that Trans Union's procedures are objectively unreasonable."); *Bradshaw v. BAC Home Loans Servicing*, 816 F.Supp. 2d 1066, 1073-74 ("Here, defendants elected to comply with their FCRA obligations by providing general descriptions of plaintiffs' dispute through an automated system. As this court explained in *Saenz*, a reasonable jury could find that a CRA acted in reckless disregard of its duties by relying exclusively on automated procedures that have been held to be unreasonable by numerous court decisions when the CRA was on notice of the possible inaccuracy of the automated responses. Therefore, this claim must also be decided by a jury.") (citing *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083-84 (D. Ore. 2007) (discussing cases); *Campbell v. Chase Manhattan Bank, USA, N.A.*, No. 02–3489, 2005 WL 1514221, at *16 (D.N.J. June 27, 2005) (parroting information received from original source may be considered a willful violation of the FCRA); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D. N.M. 2006) (noting that CRAs may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that the information is disputed); *Lambert v. Beneficial Mortgage Corp*., No. 3:05-CV-05468-RBL, 2007 WL 1309542, at *4 (W.D. Wash. May 4, 2007) (finding a question of fact as to whether the ACDV sent by the CRA contained sufficient information to comply with its reinvestigation duties).

II. B of its January 5, 2015 opinion, reverse the lower court's denial of summary

judgment on the willfulness claim, and remand the case to be heard on the merits.

## CONCLUSION

For these reasons, this Court should reverse the district court's grant of

summary judgment on all counts and remand for further proceedings.

*/s/ David L. Selby, II*
David L. Selby, II
Bailey & Glasser, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Telephone: (205) 988-9253
Email: dselby@baileyglasser.com

*/s/ Patricia M. Kipnis*
Patricia M. Kipnis
Bailey & Glasser, LLP
135 Kings Highway E.
3rd Floor E.
Haddonfield, NJ 08033
Telephone: (856) 795-0378
Email: pkipnis@baileyglasser.com

*/s/ Wesley L. Phillips*
Wesley L. Phillips
Phillips Law Group, LLC
P.O. Box 362001
Birmingham, AL 35236
Telephone: (205) 383-3585
Email: wlp@phillipslaw.com

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Petition for Rehearing** has been electronically filed with, and sent via federal express delivery to, the Clerk of Court, and mailed via first class U.S. Mail postage pre-paid to the following on the 26th day of January 2015:


Gregory R. Hanthorn  
Rebecca B. Crawford  
Jones Day  
1420 Peachtree St. NE  
Suite 800  
Atlanta, GA 30309  
(404) 581-3939  

*Counsel for Appellee*

Leilus J. Young, Jr.  
Ferguson Frost & Dodson, LLP  
1400 Urban Center Drive, Suite 200  
P.O. Box 430189  
Birmingham, AL 35242  
(205) 879-8722  

*Counsel for Appellee*


*/s/ David L. Selby, II*  
David L. Selby, II  
Bailey & Glasser, LLP  
3000 Riverchase Galleria, Suite 905  
Birmingham, AL 35244  
Telephone: (205) 988-9253  
Email: dselby@baileyglasser.com

# ADDENDUM

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11111

_____

D.C. Docket No. 2:11-cv-00938-AKK

CURTIS J. COLLINS,

Plaintiff-Appellant,

versus

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 5, 2015)

Before MARTIN, JULIE CARNES and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Curtis J. Collins appeals the district court's grant of summary judgment in favor of Experian Information Solutions, Inc. (Experian), in his lawsuit alleging Experian negligently and willfully violated its duty under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i(a), to conduct a reasonable reinvestigation of disputed information contained in his credit file.[1]  This appeal presents us with a question of first impression—whether an allegation of a violation of § 1681i(a), requiring a consumer reporting agency to conduct a "reasonable reinvestigation" of disputed information contained in a consumer's credit file, requires the consumer reporting agency to have disclosed the consumer's credit report to a third party in order for a consumer to recover actual damages.  Looking to the plain language of the FCRA, we are convinced that a consumer's credit report need not be published to a third party in order to entitle the consumer to actual damages under § 1681i(a), and we reverse the district court's finding to the contrary.

## I.  BACKGROUND

In April 2010, Equable Ascent Financial, LLC (Equable) sued Collins in the Small Claims Court of Jefferson County, Alabama.  In its complaint, Equable alleged it had been assigned an account from GE Capital Corp., and that Equable had the right to bring an action for payment on that account.  Collins answered,

---

[1] The district court also granted summary judgment to Experian on Collins' negligent and willful consumer disclosure violation claims and state law tort claims.  Collins does not appeal the district court's grant of summary judgment on these claims, instead limiting his appeal to the district court's grant of summary judgment on his § 1681i(a) claims.

denying he owed Equable any money.  After a trial where both parties appeared

with counsel, the court entered judgment in favor of Collins on July 26, 2010.

The purported debt to Equable was listed on an Experian credit report pulled

in June 2010.  In order to remove the Equable debt from his credit file, Collins

wrote to Experian on July 30, 2010, explaining:

> I don't owe any money to Equable Ascent Financial for account []
> #XXX1237.  This account is wrong.  Delete it immediately.  Equable
> Ascent sued me for this debt in the small claims court of Jefferson
> County, Alabama, case # SM-10-2973, in my answer to the lawsuit I
> denied I owed any money on the account, judgment was entered for
> defendant, you can call the court for more information at 205-325-
> XXXX or the attorneys for Equable Ascent at 205-250-XXXX.

Experian's corporate representative testified that due in part to a zip code

discrepancy on the envelope, Experian believed the letter may not have been sent

by Collins.  Experian sent Collins a letter at his home address on August 9, 2010,

stating it had received a suspicious request regarding his personal credit

information that it had determined was not sent by Collins.  The letter advised

Collins:

> If you believe that information in your personal credit report is
> inaccurate or incomplete, please [call, visit our website, or write].  Be
> sure to include all of the following:  your full name including middle
> initial . . .; Social Security number; current mailing address; date of
> birth; and previous addresses for the past two years.
>
> Include the account name and number for any item on your credit
> report that you wish to dispute, and state the specific reason why you
> feel the information is inaccurate.  We will ask the data furnisher to
> review their records to verify the information.  An investigation may

3

take up to 30 days . . . . Once we receive the results of the
investigation, we will promptly notify you of the outcome.

Collins responded in a letter dated August 19, 2010.  This letter stated:

I don't owe any money to Equable Ascent Financial for account
#XXX1237.  This account is wrong.  Delete it immediately.  Equable
Ascent sued me for this debt in Jefferson [C]ounty Alabama and I
won.  My case number is SM-10-2973.  Please delete and send me
updated credit report.

The letter also included a copy of Collins' driver's license and social security card,

and listed his birth date.

In response to this second letter, Experian sent an Automated Consumer

Dispute Verification form (ACDV) to Equable.  The ACDV listed the dispute

reason as "EQUABLE ASCENT SUED ME FOR THIS DEBT IN JEFFERSON

COUNTY ALABAMA AND I WON."  In response to the ACDV, Equable

wrongly responded that the debt was still valid.  Experian did nothing else to

investigate Collins' claim.

Experian's system generated an investigation results summary that was sent

to Collins on September 9, 2010.  The summary stated the claim had been

"reviewed" and that Collins could visit Experian's website to "check the status of

[his] pending disputes at any time."  The letter stated "reviewed" meant "[t]his

item was either updated or deleted; review this report to learn its outcome."  The

summary also provided a mailing address for Collins to request a hard copy of his

corrected credit report by mail.

4

When Collins visited the Experian website on November 23, 2010, he learned his Equable account was still being reported.  Collins subsequently filed a lawsuit against Experian in state court on February 5, 2011.  A credit report dated February 28, 2011, continued to include the disputed debt.  Experian removed the Equable account from Collins' credit report on March 10, 2011, and removed the case to federal court on March 11, 2011.  After the district court granted summary judgment to Experian, Collins filed a timely notice of appeal.

## II.  DISCUSSION

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205 (2007).  The FCRA creates a private right of action against consumer reporting agencies for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of any duty imposed under the statute.  *See Safeco*, 551 U.S. at 53, 127 S. Ct. at 2206.  Collins asserts Experian's reinvestigation of his disputed debt with Equable was unreasonable, and that Experian was liable for both negligent and willful violations of the FCRA in its handling of the reinvestigation. We review the district court's grant of summary judgment on these issues *de novo*. *Wollschlaeger v. Governor of Fla.*, 760 F.3d 1195, 1208 (11th Cir. 2014).

5

## A. Collins' Negligent Violation Claim

Section 1681o of the FCRA governs civil liability for negligent noncompliance with the statute. That section provides, in relevant part, that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1).

The district court concluded there were sufficient facts for a jury to find that Experian was negligent in failing to conduct a reasonable reinvestigation, as required by 15 U.S.C. § 1681i(a)(1), to determine whether the Equable debt was accurate. According to the district court, an issue of material fact remained as to whether Experian's investigation was reasonable when it disregarded the small claims court information Collins provided and instead relied solely on Equable to verify the debt. *See Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *see also Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (making two telephone calls to the creditor was insufficient to re-verify disputed information). Because there was a genuine issue of material fact regarding whether Experian was negligent in failing to comply with the reasonable reinvestigation requirement, the district court then had to

6

decide whether there was a genuine issue of material fact regarding whether

Collins could show "actual damages sustained by the consumer as a result of the

failure." 15 U.S.C. § 1681o(a)(1).

The district court granted summary judgment to Experian on Collins'

negligence claim because it determined Collins could not show actual damages

since he failed to present evidence that the erroneous information regarding his

Equable account was ever published to a third party. The district court collected

persuasive authority and determined "the majority of courts have consistently

required a plaintiff to prove actual harm resulting from the [consumer reporting

agency's] disclosure of the erroneous report to a third party in order to recover

damages for emotional distress."

Collins asserts the cases cited by the district court requiring publication to

third parties in order to recover emotional distress damages in an FCRA action are

distinguishable from this case. We agree. The cases contain language that, taken

out of context, seems to apply. None of the cases, however, conducted a statutory

analysis, and many also involved different subsections of the FCRA.[2] None

answered the question presented here—whether a plaintiff seeking damages for a

---

[2] *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco*, 551 U.S. at 56 & n.8, 127 S. Ct. at 2208 & n.8; *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370 (5th Cir. 2001); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474-75 (2d Cir. 1995). *But see Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

negligent violation of this specific subsection, § 1681i(a), must show the inaccurate information was published to a third party.[3]  We are the first Circuit to address the issue as presented.

We have "long recognized that our authority to interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction." *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).  Our first step in interpreting a statute is to determine whether the statutory language has a plain and unambiguous meaning.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003).  If the meaning of the words Congress used is clear, we need not resort to legislative history.  *Id.*; *see also Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs.*, 701 F.3d 356, 363 (11th Cir. 2012) ("Where the language of a statute is unambiguous . . . we need not, and ought not, consider legislative history." (quotation omitted)).

The important distinction in this case is the difference in the FCRA's definitions of the terms "consumer report" and "file."  Congress provided

---

[3]  Experian argues our statement in *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991), that "[w]e need not reach the substance of [the plaintiff's] FCRA claims . . . because we find that he has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate . . . credit report," decides this issue.  Experian, however, reads that sentence far too broadly.  Whether a plaintiff must show a consumer reporting agency published his credit report to third parties in order to be entitled to actual emotional distress damages was not at issue in *Cahlin* because there was at least circumstantial evidence a credit report was published, and we had no opportunity to and did not discuss emotional distress damages in that case.  *Id.* at 1161.

definitions in the FCRA for both of these terms and gave them different meanings.

A "consumer report" is defined as:

> any written, oral, or other *communication* of any information by a
> consumer reporting agency bearing on a consumer's credit
> worthiness, credit standing, credit capacity, character, general
> reputation, personal characteristics, or mode of living which is used or
> expected to be used or collected in whole or in part for the purpose of
> serving as a factor in establishing the consumer's eligibility for . . .
> credit or insurance . . .; employment purposes; or any other
> purpose . . . .

15 U.S.C. § 1681a(d)(1) (emphasis added).  In contrast, "[t]he term 'file', when

used in connection with information on any consumer, means all of the information

on that consumer *recorded and retained by a consumer reporting agency*

regardless of how the information is stored."  15 U.S.C. § 1681a(g) (emphasis

added).  According to the FCRA's definitions, a "consumer report" is

communicated by the consumer reporting agency, while a "file" is retained by the

consumer reporting agency.

Collins claims Experian violated 15 U.S.C. § 1681i(a), which imposes on a

consumer reporting agency the duty of conducting a reasonable reinvestigation of

disputed information in a consumer's credit file.  That provision states:

> [I]f the completeness or accuracy of any item of information
> contained in a consumer's file at a consumer reporting agency is
> disputed by the consumer and the consumer notifies the agency
> directly . . . of such dispute, the agency shall, free of charge, conduct a
> reasonable reinvestigation to determine whether the disputed
> information is inaccurate . . . .

15 U.S.C. § 1681i(a)(1)(A).  The reinvestigation provision addresses the "completeness or accuracy of any item of information contained in a consumer's *file*."  *Id.* (emphasis added).  This stands in stark contrast to the language of 15 U.S.C. § 1681e(b),[4] which requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of a consumer report, specifically providing that "[w]henever a consumer reporting agency prepares a *consumer report* it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b) (emphasis added).

Looking at the entire statute, Congress chose to give different statutory definitions to the terms "consumer report" and "file," and used the different terms in different subsections.  *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("[W]e must presume that Congress said what it meant and meant what it said."); *Iraola & CIA, SA v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings.").  A "consumer report" requires communication to a third party, while a "file" does not.  *See Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983) ("Where Congress includes

---

[4] Collins originally claimed Experian also violated 15 U.S.C. § 1681e(b).  Collins dropped his claim under § 1681e(b) prior to summary judgment, when discovery provided no evidence that Experian had ever furnished Collins' credit report containing the disputed debt to a third party.

10

particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally or purposely in the disparate inclusion or exclusion." (brackets and quotations omitted)).  Thus, by its plain terms, § 1681i(a) does not require communication to a third party; it provides a consumer reporting agency violates that provision if a consumer notifies the agency there is inaccurate information contained in his *file* and the agency does not conduct a reasonable reinvestigation into the matter.  A file is simply the information retained by a consumer reporting agency.  Thus, we hold that the plain language of the FCRA contains no requirement that the disputed information be published to a third party in order for a consumer to recover actual damages under § 1681i(a).

The district court viewed Collins' actual damages evidence under the belief that Collins' credit report had to have been published to a third party, so it did not have an opportunity to analyze whether Collins' evidence of emotional distress was sufficient to present a jury question on actual damages.  *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124 (11th Cir. 2006) (stating "the existence of compensable emotional distress is relevant to the amount of damages a plaintiff will ultimately recover" in an FCRA case).  We therefore remand to the district court to conduct this inquiry in the first instance.

*B. Collins' Willful Violation Claim*

Under 15 U.S.C. § 1681n(a), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual, statutory, or punitive damages. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). The Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco*, 551 U.S. at 71, 127 S. Ct. at 2216; *see also Harris*, 564 F.3d at 1310 ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law."). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69, 127 S. Ct. at 2215.

The district court did not err in finding that while a jury could find Experian's reinvestigation conduct negligent, Experian's conduct did not rise to the level of running "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *See id.* Taking no steps other than contacting only Equable with an ACDV form regarding the disputed entry

might have been negligent, but willfulness or recklessness is a higher standard that has not been met in this case.  Therefore, we affirm the district court's grant of summary judgment on Collins' claim that Experian willfully violated § 1681i(a) when reinvestigating his disputed debt.

### III.  CONCLUSION

We reverse the district court's determination that third-party publication is necessary in order for a consumer to be entitled to actual damages under 15 U.S.C. § 1681i(a), and remand to the district court to determine in the first instance whether Collins has presented sufficient evidence of actual damages to create a jury question.  We affirm the district court's grant of summary judgment on Collins' claim Experian willfully violated its duty of conducting a reasonable reinvestigation.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**